IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LAYTH MOHAMMAD AL-TURK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNIVERSITY OF NEBRASKA, ) <br> BOARD OF REGENTS OF THE ) <br> UNIVERSITY OF NEBRASKA, ) <br> UNIVERSITY OF NEBRASKA ) <br> COLLEGE OF LAW, SUSAN ) <br> POSER, Dean of the University of ) <br> Nebraska, College of Law, JOHN ) <br> LENICH, Honor Code Prosecutor for ) <br> the College of Law, BRIAN ) <br> LEPARD, Individually, and CRAIG ) <br> R. LAWSON, Honor Committee ) <br> Chairperson, ) <br> ) <br> Defendants. ) <br> ) | 8:13CV74 <br><br> MEMORANDUM AND ORDER |

    Today, I held a hearing on Plaintiff's request for a temporary restraining order. I took judicial notice of the evidence attached to the indexes submitted by the parties. As is my practice on requests for temporary restraining orders, I did not take live testimony. I also heard the arguments of counsel.[1]

    I now deny the request for a temporary restraining order. Briefly, the reasons for my decision are set forth below.

---

[1] The lawyers did a great job. In particular, I compliment counsel for Plaintiff.

## I.  BACKGROUND

Plaintiff has filed a Complaint seeking damages and injunctive relief stemming from alleged violations of the Due Process Clause and the Equal Protection Clauses of the 14th Amendment to the U.S. Constitution, the equivalent clauses of the Nebraska State Constitution, and 42 U.S.C. § 1983 and 42 U.S.C. § 2000d.  In support of his motion, Plaintiff has submitted an Index of Evidence containing his affidavit setting forth the basis of his complaints, along with the affidavit of his attorney, Robert A. Mooney.

Plaintiff's affidavit submitted in support of his Motion for Temporary Restraining Order establishes that he is a U.S. Citizen and he is Arab and Muslim. Plaintiff's affidavit further establishes that he is a resident of Omaha, Nebraska and until February 28, 2013 was a student studying law at the University of Nebraska College of Law. Plaintiff was dismissed from the College of Law after hearing by an Honor Committee established under an Honor Code covering conduct and discipline of law students.  Plaintiff's dismissal by the Committee was affirmed by the Dean of the College of Law on February 28, 2013.

Plaintiff's affidavit further establishes that (1) he was midway through the spring 2013 semester when he was dismissed; (2) he had paid the tuition for the spring 2013 semester; (3) he has incurred substantial student debt to attend the law college; (4) he had completed 81 hours towards his Juris Doctorate Degree and was within 30 hours of completing his degree when dismissed; (5) he had progressed partially through the spring semester and will lose the benefit of his progress this semester if not allowed to continue his studies pending this litigation; and, (6) if Plaintiff is not enrolled full time as a student, his accrued student loan debt will become immediately due, and will begin to accrue substantial interest.

Evidence from Defendants showed that Plaintiff had been readmitted to law school on probation in August of 2012 after previously failing to keep up his grades.

In the fall of 2012, other evidence showed that Plaintiff copied almost verbatim and without attribution materials from two texts and submitted that information as part of his class work. There is a strong showing that Plaintiff was guilty of plagiarism. The evidence also tends to show that Plaintiff may have lied to his professor about the paper that contained the plagiarized material, although that evidence is less strong.

The evidence also shows that the Honor Code provides procedural protections that are entirely consistent with the law. However, there are two questions for which the answers are not so clear.

There is a question about whether Defendants followed the Honor Code in one particular regarding an incident where the professor who submitted the plagiarism complaint conferred with Plaintiff without notifying Plaintiff that the complaint had been made by that professor. The recorded recollection of the professor was later used as evidence by the Honor Code prosecutor. When questioned by the prosecutor during an investigation, the Honor Code requires that the student have notice of the charges and it allows a student to remain silent. Essentially, Plaintiff claims that the professor was acting as the hidden hand of the prosecutor.

There is also a question about whether white students have been penalized less harshly than minority students such as Plaintiff who have plagiarized material. In that regard, there is a difficult subsidiary question about whether those other students were similarly situated to Plaintiff.

## *II. ANALYSIS*

In *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981), the court, sitting en banc, clarified the standard district courts should apply when considering a motion for preliminary injunctive relief:

> (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Dataphase*, 640 F.2d at 114. "No single factor in itself is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998).

> At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined. . . .
>
> . . . .
>
> [W]here the balance of other factors tips decidedly toward movant a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation.

*Dataphase*, 640 F.2d at 113.

I believe that the *Dataphase* case must be applied to temporary restraining order situations. *Cf. Baker Elec. Co-Op, Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994). When I do, the balance of the equities do not weigh in favor of disturbing the status quo.[2]

First, the threat of irreparable harm to Plaintiff is real but limited. Time lost this semester can never be recovered. It would also be nearly impossible to value that loss of time. Otherwise, Plaintiff could be compensated for any losses he may incur by the payment of money. The first factor favors Plaintiff but only minimally so.

---

[2]To be clear, nothing I have written in this rapidly prepared Memorandum and Order precludes Plaintiff from ultimately prevailing.

Second, the state of Plaintiff's harm when balanced against Defendants' slight institutional interests is at equipoise. In other words, this factor does not favor either party.

Third, at this early stage of the proceedings, it is not "probable" that Plaintiff will prevail on the merits and this factor weighs in favor of Defendants. It is hard to believe that Defendants' discriminated against Plaintiff because of his protected status. The uncontradicted evidence shows that, after failing to maintain his grades, Plaintiff was readmitted to the law school on probation about two months before this dispute first arose. In other words, the leniency with which Plaintiff was treated in August of 2012 strongly rebuts any suggestion that the final dismissal decision in February of 2013 was driven by religious, racial or ethnic animus. Moreover, even if the Honor Code is construed to have prohibited the prosecutor from using the recorded recollection of the complaining professor about a conversation with Plaintiff held after the charge was made but before Plaintiff knew of the charge, in every other respect Plaintiff was provided with all the process he was due. Just as no trial is perfect, no Honor Code prosecution is likely to be perfect. Simply put, the Due Process Clause does not require perfection.

Fourth, the public interest strongly favors the Defendants. Ethical law students are a precondition to having an ethical legal profession. In turn, an ethical legal profession is crucial to Article III of the Constitution relating to the third branch of government, the judiciary. Swift enforcement of ethical norms for law students is very important to the public, just as swift enforcement of ethical norms for lawyers is very important to the public. After all, we are talking about the public's confidence in the rule of law.

### III.  CONCLUSION

The motion for a temporary restraining order will be denied. However, I want this case expedited for a preliminary injunction hearing and a trial. *See* Federal Rule

of Civil Procedure 65(a)(2).  I would think we could get this case tried to a jury and equitable issues resolved by July 15, 2013 or before.  Thus, if Plaintiff prevails, he could start school again in the fall.  I therefore refer this matter to Magistrate Judge Zwart with the request that she rapidly progress this case.

    IT IS ORDERED that:

1. The Motion for Temporary Restraining Order (filing no. 2) is denied.

2. This case is referred to Magistrate Judge Zwart for expedited progression.

DATED this 12th day of March, 2013.

                                  BY THE COURT:

                                  *Richard G. Kopf*
                                  Senior United States District Judge